```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
STEVEN SIGGELKO,

                    Plaintiff,

        -against-                    MEMORANDUM AND ORDER
                                     06-CV-2281 (JS)(WDW)

KOHL'S DEPARTMENT STORES, INC.
and 3600 Long Beach Road, LLC,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Daniel M. Tanenbaumm, Esq.
                    Law Offices of Daniel M. Tanenbaum
                    111 Great Neck Road, Suite 308
                    Great Neck, NY 11021-5402

For Defendants:     Christopher M. Rogers, Esq.
                    Eileen Mary Baumgartner, Esq.
                    O'Connor, O'Connor, Hintz & Deveney, LLP
                    One Huntington Quadrangle, Suite 3C01
                    Melville, NY 11747
```

SEYBERT, District Judge:

Presently pending before the Court are motions for summary judgment by Kohl's Department Stores, Inc. ("Kohl's") and 3600 Long Beach Road, LLC ("3600") (collectively, "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and a motion to strike the Defendants' answers and impose sanctions by Steven Siggelko ("Siggelko" or "Plaintiff"). For the reasons discussed below, Plaintiff's motion is DENIED and the Defendants' motion is GRANTED.

## BACKGROUND

On November 22, 2005, Kohl's advertised a "door-buster special" the morning of November 23, 2005, and solicited customers

to arrive before normal business hours for the sale. As a result, Plaintiff arrived at Kohl's at 7 a.m. on November 23, 2005. Siggelko entered Kohl's, made a purchase, and left the store to return to his car around 8:15 a.m. Just before he reached his car, Siggelko slipped and fell on the black ice in the shopping center parking lot that is owned by Defendant 3600. Although Plaintiff does not detail his injuries, he contends that he has become "sore, lame and disabled" and will likely be permanently injured.

Based on the submissions, it is apparent that neither party knows exactly how long the black ice was present before Plaintiff fell. Plaintiff did not observe any ice in the parking lot prior to the accident, nor does he allege that others noticed the ice. In fact, Plaintiff only saw the black ice after he fell. Defendants offers expert evidence that it had rained, but not snowed, the day before the accident. At some time around 3:00 a.m., approximately four hours before Plaintiff fell, the temperature dropped below freezing. At some point after the accident and after seeking medical treatment, Plaintiff returned to the scene to file an accident report with Kohl's. One Kohl's employee filled out the report and took pictures of the scene. By the time the report was filed and photographs were taken of the scene, the temperature had once again gone above freezing, the ice that caused the accident had melted, and any traces of water had dissipated.

At the time of the accident, Kohl's leased a portion of the shopping center from 3600, but Kohl's did <u>not</u> own or lease the parking lot where Plaintiff fell. Pursuant to the lease agreement, 3600 was responsible for maintaining the parking lot. Specifically, section 6.1(b) of the lease agreement provides that 3600 shall "police and maintain" all common areas within the shopping center "at all times after the Premises are opened for business to the general public . . . including but without limitation, . . . keeping the same free of snow, ice, water and rubbish . . . ." (Defs'. Mem. in Supp. of Mot. for Sum. J. at 6).

Subsequently, on May 4, 2006, Plaintiff served Kohl's with the Summons and Complaint, alleging negligence. On May 17, 2006, Kohl's removed the case to the Eastern District of New York.

<u>DISCUSSION</u>

I. <u>Plaintiff's Motion to Strike Based on Spoliation of Evidence</u>

  A. <u>Standard</u>

A party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. <u>See Kronisch v. United States</u>, 150 F.3d 112, 126-128 (2d Cir. 1998) (citing <u>Nation-Wide Check Corp. v. Forest Hills Distributors</u>, 692 F.2d 214, 217-18 (1st Cir. 1982); 2 John Henry Wigmore, <u>Evidence in Trials at Common Law</u> § 291 (James H. Chadbourn rev. 1979). This adverse inference rule is based on

evidentiary, prophylactic, punitive, and remedial rationales.  <u>Id.</u> at 126.  The court in <u>Kronisch</u> explained those rationales at length:

> The evidentiary rationale derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction.  The prophylactic and punitive rationales are based on the equally commonsensical proposition that the drawing of an adverse inference against parties who destroy evidence will deter such destruction, and will properly "plac[e] the risk of an erroneous judgment on the party that wrongfully created the risk." <u>Nation-Wide Check</u>, 692 F.2d at 218.  Finally, courts have recognized a remedial rationale for the adverse inference -- namely, that an adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

<u>Id.</u> (additional citations omitted)

In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed.  <u>Fujitsu Ltd. v. Federal Exp. Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001) (citing <u>Kronisch</u>, 150 F.3d at 126).  This obligation only arises when the party has notice that the evidence is relevant to litigation, either because suit has already been filed or because a party should have known that the evidence may be relevant to future litigation.  <u>Kronisch</u>, 150 F.3d at 126.  Once a court has

concluded that a party has this obligation, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence. Fujitsu, 247 F.3d at 436 (citing Kronisch, 150 F.3d at 127). In the context of deciding a motion for summary judgment, a court must construe all facts in favor of the non-moving party; thus, a court must assume a party has intentionally destroyed evidence that it had an obligation to preserve. Kronisch, 150 F.3d at 127. But this does not end the court's inquiry. For a court to impose sanctions for destruction of this evidence, Plaintiff must still make some showing that the destroyed evidence would have been relevant to the contested issues. Id. (citing, inter alia, Stanojev v. Ebasco Servs., Inc., 643 F.2d 914, 923-24 (2d Cir. 1981) (refusing to draw inference, based on non-production of personnel records, that the records would have substantiated plaintiff's age discrimination claim, where the non-production bore "no logical relationship to a finding of age discrimination" because "the documents [were] from a time period prior to [plaintiff]'s assumption of the position from which he was discharged")).

The destruction of evidence can alone raise the inference that the contents were unfavorable to the possessor. Id. (citing 2 Wigmore, Evidence in Trials at Common Law § 291, at 228). Thus, where the innocent party has produced some meaningful evidence in support of his claim, the intentional destruction of relevant

evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line.  Id. at 128.  But the destruction of evidence, standing alone, is not enough to allow a party who has produced no evidence -- or utterly inadequate evidence -- in support of a given claim to survive summary judgment on that claim.  Id. (citing Nation-Wide Check, 692 F.2d at 218-19).

Finally, the determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge.  See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999), and is assessed on a case-by-case basis.

B. Application in this Case

In this case, it is clear that Kohl's had the obligation to preserve in its files the evidence collected after the accident, namely the pictures taken of the scene where Plaintiff fell and the accident report.[1]  Assuming that Plaintiff suffered some injury, Kohl's could have anticipated that Plaintiff would file a lawsuit shortly thereafter.  In fact, Plaintiff filed suit approximately ten months after the accident.[2]  To the extent that Plaintiff had

---

[1] On the other hand, 3600 had no obligation to preserve the evidence.  Nowhere in Plaintiff's papers does he suggest that 3600 ever had possession of the accident report or the pictures of the accident scene.  Thus, Plaintiff's motion to strike 3600's answer is DENIED as without merit, because Plaintiff has failed to show any of the necessary elements that would cause this Court to impose sanctions on this Defendant.

[2] Plaintiff fell in the parking lot on November 25, 2005 and filed suit on September 15, 2006.

a right to review the accident report and pictures of the scene, Kohl's failed to meet its obligation. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 458 (2d Cir. 2007). Moreover, because the Court must construe all facts in favor of the non-moving party, the Court must assume that Kohl's intentionally destroyed the evidence. Kronisch, 150 F.3d at 127. But the question as to whether the evidence had any bearing on Plaintiff's ability to establish its claims is a different matter.

Even assuming that the pictures and report indicate that there was ice at the scene of the accident, such evidence does nothing for Plaintiff's case. As discussed more fully below, Plaintiff cannot sustain a claim against Kohl's because the accident did not occur on Kohl's property; therefore, Kohl's had no duty to Plaintiff. Additionally, even when reading the evidence in a light most favorable to Plaintiff, it is clear that any ice at the scene could not have existed for more than a few hours before the accident occurred; therefore, in accordance with well-established law cited below, 3600's failure to remove any ice could not have been a breach of its duty of care as a matter of law.

Thus, granting Plaintiff's motion to strike Defendants' answers based on spoliation of evidence is wholly inappropriate under the circumstances and is hereby DENIED.

II. <u>Defendants' Motion for Summary Judgment</u>

    A.    <u>Rule 56: Standard of Review</u>

A party seeking summary judgment has the burden to establish that "there is no genuine dispute concerning any material facts," and, therefore, it "is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp.</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.

Once the moving party establishes its initial burden, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Anderson</u>, 477 U.S. at 256). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." <u>Gallo v. Prudential Residential</u>

8

Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

B. Negligence Under New York Law

The elements of a common law negligence claim are: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Rivera v. Leto, 04-CV-7072, 2008 WL 5062103, at *7 (S.D.N.Y. Nov. 25, 2008) (quoting Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981)). Despite the fact that Plaintiff has presented little to no evidence that he was injured, the Court assumes that he has satisfied his burden of showing injury. Whether, based on the evidence, any rational jury could find in favor of Plaintiff on the issues of duty, breach, and cause in fact and proximate cause, however, is a different matter.

C. Duty, Breach, Cause in Fact, and Proximate Cause in this Case

1. Kohl's had No Duty of Care

Based on the submissions of the parties, there do not appear to be any material facts in dispute. The lease is quite clear that 3600, not Kohl's, is responsible for maintaining the parking lot. Thus, the Court finds that no rational jury could

find that Kohl's owed Plaintiff a duty of care.

Accordingly, the Court GRANTS Kohl's motion for summary judgment.

### 2. 3600 Did Not Breach its Duty of Care, as a Matter of Law

Defendant 3600 cannot argue credibly that it had no duty to shopping center patrons that utilized its parking lot. Instead, 3600 contends that it did not have notice of the black ice, and, because of the sudden freezing overnight, did not have a reasonable opportunity to remedy the defective condition of the parking lot. In considering the applicable New York state case law, this Court agrees with 3600.

In <u>Simmons v. Metropolitan Life Ins. Co.</u>, 84 N.Y.2d 972, 646 N.E.2d 798, 622 N.Y.S.2d 496 (1994), the New York Court of Appeals considered a case similar to the one now before the Court. <u>Simmons</u> involved a plaintiff who was injured when he slipped on an ice patch located on the path leading to the entrance of a building owned by defendant and third-party plaintiff. Pursuant to a contract with the building owner, the third-party defendant was responsible for maintaining the building grounds, which included snow removal. 84 N.Y.2d at 972. At trial, a jury found in favor of plaintiff. Defendant appealed, and the Appellate Division of the Supreme Court, First Department, reversed the trial court's judgment. On appeal, the Court of Appeals noted that plaintiff presented evidence that icy patches had been noticed weeks prior to

the accident, but introduced no testimony that defendant was notified of these icy conditions. Id. at 973. Moreover, plaintiff presented no evidence as to the origin of the patch of ice on which plaintiff allegedly slipped and whether defendant had sufficient time to remedy the dangerous condition. Accordingly, the Court of Appeals affirmed the Appellate Division's order, holding that no rational trier of fact could have found for the plaintiff.

The Appellate Division of the Supreme Court, Second Department, dealt with another similar case in DeStefano v. City of New York, 838 N.Y.S.2d 599 (App. Div. 2007). That case involved a plaintiff who was allegedly injured when he slipped and fell on an icy area of the public sidewalk of 27th Avenue in Brooklyn, which abuts a ballpark that is part of Lafayette High School. Evidence presented by the City indicated that the ice patch could have been caused by a snow storm that had begun only a few hours before plaintiff fell and was still in progress at the time of the accident. The plaintiff testified that he observed a sheet of ice at the location after he fell. 838 N.Y.S.2d at 600. In rejecting plaintiff's claim, the court held that "[r]esponsibility for ice conditions arises, at the most, only after the lapse of a reasonable time for taking protective measures and never while a storm is still in progress. Id. (internal quotation marks and citations omitted).

Like the plaintiffs in Simmons and DeStafano, Siggelko

here fails to present any evidence as to when or how the ice could have formed.  Defendants, on the other hand, offer evidence establishing that the ice must have formed that morning, within hours of the accident, due to the rain storm that occurred the night before.  Similarly, Plaintiff offers no evidence establishing that Defendants had any notice of the icy conditions in the parking lot.  Under the circumstances, even if Plaintiff offered evidence that the ice existed since 3 a.m. and 3600 had notice, no rational jury could find that 3600 breached its duty by failing to remedy the conditions within a four-hour period; 3600 would have had a reasonable amount of time after being notified of the icy conditions to remedy the problem.

Having concluded that, based on the facts presented, no rational trier of fact could conclude that 3600 breached its duty of care, the Court GRANTS 3600's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to strike Defendants' answers due to spoliation of evidence and GRANTS Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The Clerk of the Court is directed to mark this matter CLOSED.

                              SO ORDERED.

                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
           March  16 , 2009